Good morning. Good morning, Counsel. Please, the Court, Stephen Day for Appellant Paul Weddle. I believe the issue before the Court today is what kind of notice did these officers receive before the incident in question. Were they on notice that taking down an individual who had surrendered, who was not a flight risk, who was not posing a threat to the officers, and that under those circumstances, a front takedown would be a violation of the Fourth Amendment and would be excessive force. And I believe the case law present at the time would suggest that it was. Tell me your best case that establishes a clearly established right. And with Supreme Court keeps telling us, don't just cite as general principles. Give us a case that's got something with specificity. With respect to the takedown, what's your best case? Blankenhorn v. City of Orange, where the individual was unarmed and touched anyone, was generally obeying officer instructions. He had been picked up because he was. Blankenhorn, the officers gang-tackled and repeatedly punched somebody for trespassing in a mall. Correct. Here, your guy has stolen an airplane, is flying it around, doing touch and go. They have reason to think he may be dangerous to the public. The facts are kind of different, aren't they, than Blankenhorn? The facts are, well, if you're looking at the severity of the crime, yes. But we're talking about an individual who has surrendered. Well, we've all watched the video, so. Right. He's coming out of the airplane, and they're saying, get down, get down, get underground. He's got something in his hand, and one of the officers takes him and puts him down underground. Correct. Under those circumstances, again, let's assume a constitutional violation. I'm looking at the clearly established prong. I'm having trouble with that kind of crime. If he were a bank robber under those circumstances and surrendering, would they be able to put him underground? No, not if he surrendered. They can't put anybody underground. If he surrendered and if he's following officer instructions, no, they cannot put him underground. We have a case here where they suspected the ---- Cannot. I can only refer to cases where they are following officer instructions and shooting a beanbag at them, gang tackling, siccing a dog on them. Those are all instances of excessive force. I cannot give you a case where someone has stolen an airplane or stolen a vehicle, where he has surrendered and he's obedient to officer commands, where the court concluded ---- And that's taking the facts in the light most favorable to your client, as we have to. I'm not sure that he really was surrendering and obedient, but let's assume that's true because we're on the summary judgment stage. I think there could be a fact issue about that. But I'm trying, again, because we keep getting reversed by the Supreme Court. So I'm trying to find a case that's close. Guy v. City of San Diego, where he was subdued, he was handcuffed, and then the officer kicked him. That happened in this ---- at least on the video I saw. After he was handcuffed, one of the officers went up and kicked him. Your Honor, I'm not familiar with the case you're referring to. Well, you've got two officers here, right? One took him down and the other one kicked him. I'm discussing a case with him. Can I finish? Yeah, I'm sorry. The case is Guy v. City of San Diego, 608 F3D 582. You don't have that case? No. Okay. I think the case Judge Wardlow was discussing was one that involved some violence after somebody was taken down. And so my question is, do you have a different case against Officer Olson than you have against Officer ---- first officer, whoever it is. Nutzman. Nutzman. Nutzman. Nutzman. The case against Officer Olson is different. He is handcuffed. He's sitting down on the tarmac, surrounded by police officers, and there is a gratuitous kick. And if I were to ask you if there were a case that clearly established that and you knew about the one that Judge Wardlow just said, I think that would be a pretty good citation, wouldn't it? There's also Santos v. Gates, similar. See, I have an easier time finding clearly established law with respect to the kick than I do to the takedown. Yeah, I do, too. But, well, the problem is the takedown, I mean, if you look at the video in the light of the day, you can see that the officer was favorable to your client. Looking at it from that perspective, he was, I mean, granted his hands weren't completely up, but he was following the officer's orders. And then all of a sudden, it looks like one officer sort of charged at him and took him out from under, as he was coming down the ladder, the rope ladder. And so it's a question whether he was fully subdued. I don't know. Is it enough to go to a jury at that point based on that video? Well, you're right. Yeah, he's come down the ladder. Hands, he's instructed to show his hands. Hands raised, show his hands. They were shoulder height. I mean, was he reaching for the sky? No. They were shoulder height. When he was taken down, he was in the process of going to his knees. He had just been told to get on your knees. And before he could even respond and get on his knees, this officer grabbed him and did a front takedown. Could they have put him to the ground in a non-excessive manner? Would you then have a claim? They surely could have put him to the ground to search him, could they not? We're concerned today about whether or not these officers had notice. No, I'm asking a different question. You're answering a different one than I'm asking. Let's assume that the put down on the ground had been more gentle than it was. The officers said, get down on the ground, we need to search you, and they put him down on the ground. That would not be excessive force, would it? I agree. So what you're claiming is that the way they put him down on the ground was excessive force. The way they put him down on the ground was excessive force in light of the fact that he had surrendered and that he was following up. But I'm saying even if he had surrendered, they would be entitled to put him on the ground to search him, would they not? I agree with you. So your real claim is that the way they put him on the ground violated the Fourth Amendment. In light of what was going on at the time. What about context? Just trying to explore. What about context other than the way they put him on the ground? I mean, look backwards to what had happened, what he had been doing. The concerns and suspicions that had been raised. When a person comes off of a plane, he's been doing touching gauze, he's stolen a plane, they don't know what they're confronting. And sure enough, they're going to tell him to raise his hands, and they're looking to see whether he has a weapon. But they really don't know what's behind it. They don't know what he might have on him right now. So would they not be justified, even though they told him to raise his hands, when he got close enough to take him down to make sure that there was no chance that he could somehow otherwise accost them or go to something that he might have on him. They just didn't know who he was, why he was doing this, what danger he presented, whether there were other people. I mean, the whole context, I guess, is important, isn't it? Your Honor, he's done touching gauze. He's parked the airplane where he picked it up. This case is no different than somebody that has stolen a vehicle. Oh, sure it is. I mean, you don't think that the public is put in more danger by a stolen airplane than a stolen vehicle? His officers come and maybe they don't — maybe there isn't any terrorism going on. But somebody breaks into an airport, steals an airplane, and does touch and gauze with it. You know, I think if I'm an officer, I'm a little more concerned about that guy than the guy in the stolen car. It's unusual. But, Your Honor, I believe the focus should be on what was he doing at the time of the taking. Well, so — I don't — Go get back to Judge Oliver's question, because it makes a difference to me, too. We've got this strange crime. He takes a long time — I mean, watch the video. It takes a long time to come out of the cockpit. He's shutting the airplane down. He's a pilot. He's under the influence, correct? And he's under the influence. Yeah, okay. But he's also shutting the airplane down. I know. He's not just doing innocent things. I mean, so he's shutting the airplane down. But it takes quite a while to come out after the door gets open. Does that — can that factor into the officer's concern about who they're dealing with at this point? Yeah. I think all those things matter. But I think what — So when I'm looking for clearly established law, I have difficulty on the takedown using Blankenhorn, who's a mall trespasser, as the paradigm, because this guy's doing something worse than trespassing in a mall, isn't he? He's parked the airplane at the time of the takedown. The crime committed, yes, is worse than that of being a trespasser. So in response to Judge Oliver's question, does that make a difference? I think it's certainly — it's obviously, pursuant to Graham, a consideration. You have to look at the crime committed, the severity of the crime committed. But you also have to focus on — and there's been a complete lack of focus on what is going on at the time of the takedown. He surrendered. If the video shows nothing else, it shows that he surrendered. Hands up. He's compliant with officer commands. The reason why he's so vulnerable when they take him down is the officers just asked him to get on his knees. Why would you give an instruction to a suspect to get on his knees if you have no intention — if your intent is to do a front takedown? That's why he went down so hard. They didn't even give him a chance to comply with the officer's instructions. All right, counsel. You're over your time. Why don't we see what the counsel has to say. Thanks for your time. Thank you. May it please the Court. Craig Anderson on behalf of officers Nutzman and Oltzman. And I think where the focus of this has gone is to the second prong of the Graham factors, the immediacy of the threat. And Mr. Weddle's counsel has made the argument that he had surrendered. The primary issue with the takedown, the reason the takedown was performed, was because Mr. Weddle still had an object in his hand that he was not surrendering. What officer Nutzman testified to was he made a decision to go hands-on before he had exited the plane. Going hands-on means he's going to handcuff him. It means he's going to touch him. He did not make the decision to take him to the ground until he said his feet were on the tarmac and he had that item in his hand because he didn't know what the blunt object was. What was in his hand? It ended up being a radio headset. So it was a dark object that officer Nutzman described in his deposition as being a blunt, it looked like a blunt object to him. So the issue then is whether it's reasonable to perform a routine front takedown on an airplane because the time in the plane is important because the officers don't know what he's doing for that minute and a half. And also they don't know if there's anyone else in the airplane. So assume, just for purposes of discussion, that the district court was correct in dealing with officer Nutzman. Can you change your focus, Officer Olson? We've all watched the videos. Yes. Boy, it just looks to me like a gratuitous kick in the leg. And the kick, if the kick was on the other side, at least you could say it was opening him up, but he just looks like he just takes a shot at this guy. Yes. And Judge Wardlaw found a case. So tell me why that shouldn't go to the jury. And admittedly the leg strike is more problematic. When they set Mr. Weddle up, they asked him to spread his legs. Now the officers testified that suspects often hide weapons, knives, guns. No, I'd understand why they'd want to spread his legs. But when he didn't, he gets a kick. And he gets a kick on the outside, not on the inside, to spread them. So if Officer Olson had stepped between him and kicked his legs open, I'd understand the argument. But it just looks like you're not obeying instructions on a kick. It looked like a surge of adrenaline is what it looked like. And that's not a permissible use of adrenaline by a police officer. Well, and I think I would start, and I'll work my way down, with the broad proposition that's found in Graham v. Conard, that not every push or kick or shove is unconstitutional. And I would then move that into Saussure v. Katz. So you're saying we should just look the other way because with one kick in, it's de minimis. Well, I think you also have ARPAN. ARPAN, the ARPAN case, which states that, and I understand the law in this circuit, but ARPAN says, you know, if there's no injury, that's a factor that goes into the analysis as well. We don't know whether there's an injury. Yeah, I mean, do we know? We know he claimed injuries from the takedown. Did he not claim an injury from the kick? No. And in his deposition, he said he didn't even know he had been kicked until he saw the video. You know, the kick didn't register with him. He was not aware of it. He didn't know what had happened. And there were no physical injuries in the lawsuit during discovery, complaints, claim of injury, bruises. So all the injuries are from the takedown? All of the injuries are to the head, correct. The injuries were a complaint that he suffered some facial abrasions, and then his allegation is that it increased the severity of his preexisting seizures. And Weddle said he was intoxicated. He didn't remember anything that occurred during the incident. Is that right? Correct. He stated several times that he has some vague memories, but none of even the officers being present, pointing guns at him, yelling commands. So he didn't really offer any factual evidence in this case. You know, the video is what he rested on, because he did say that he had no knowledge or no memory of the leg kick. So I want to understand your position on the kick. Is it that it may have been excessive, but he suffered no injury? He didn't offer any evidence of injury? Well, I think the injury factor goes into it. And that's from our point of view. Well, no. So let's assume for a moment a police officer gratuitously kicks me. Okay. During a legal arrest. So I'm not. Okay. He doesn't walk just up on the street. Got a legal arrest, and he doesn't like me, so he kicks me. But it doesn't – I don't suffer any damage from it. It just momentarily hurts. Is that – there's no 1983 case then? Well, I think what you have – well, I don't think so, because I think you have Graham v. Conard that says not every push or shove. You know, we're not going to constitutionalize every – Well, that's what Judge Bordlow was asking. What you're basically saying is this was de minimis? Yes. That would be the primary focus of that argument, that sometimes you have things that happen. And Saucier v. Katz says that, that sometimes you have a use of force that later looks bad, that if the officer is justified because of the totality of the circumstances, that it may be forgiven. Well, but I'm saying let's assume he's not justified because of the totality of the circumstances, because that's – certainly there's a jury question on that looking at this video. Your argument is even if he wasn't justified under the totality of the circumstances, this is close enough for government work? And to be candid, I think the cases are split on that. I think you have cases that focus on the de minimis of an injury and they let it go, and you have other cases that don't, like the ones that Judge Wardlock found. I don't know that it's clearly established. But I think – I mean, certainly it's against the police training and policy and whatever to gratuitously kick somebody after they're already handcuffed. I'm quite certain of that. Do you agree that it was gratuitous or whether it's some – is there some justifiable way to say that when a person says spread your legs and you don't spread them, that there's a technique they would use to get you to open your legs? Would this – could that be justified? Yeah. That would be the technique. I'm not saying it is. Yeah. That would be the – But he wasn't – on the video, it doesn't look like he was employing a technique to get him to open his legs. He was just kicking him. Yeah. Well, he said, you know, open your legs, and then he did strike him. But we're at summary judgment. We are at summary judgment. So the question is, is there enough there to go to the jury on whether he was – you know, on what occurred? With respect to Officer Olson. I don't think there's enough, and the reason being is, again, the de minimis argument, that he didn't suffer any injuries, he didn't complain about it. He said, I didn't even know that happened until I watched the video. And so I don't know that that gets to a jury, because then you're constitutionalizing every, you know, minor type of force. I think that if you get into the – you know, there's lots of cases with strikes and punches that perhaps in hindsight weren't the most well thought out, but they don't always go to a jury, and one factor that is looked at is the severity of the injury. And so I think that you could get around it on that. That would be my argument. And, well, any other questions, or I'll sit down, but if you'd like me to address the clearly established prong, I could. That's okay. We're well aware of Kinsella. Okay. Thank you, counsel. Okay. And I'll give you another minute if you want to respond. Thank you for not mentioning it earlier. Yeah. Thank you. Thank you. In addressing the propriety of the strike by Officer Olson, in the video it's fairly clear that Mr. Whittle is concerned about other things, like he's just been – his face has just been driven into a tarmac. I've asked him to assume that that's a perfectly appropriate takedown. I just want to focus separately on Olson. Tell me why that kick is a constitutional violation. Well, if you're concerned – if the court's concerned that having hands raised and following officer's instructions isn't enough, certainly being handcuffed and sitting on the ground – he was no threat to anyone. And it's fair – I mean, he probably didn't extend his leg because he's been injured. He's sitting on the ground. And officers are – He's also drunk. Officers are – well, he's intoxicated, but officers are also talking to him while he's sitting on the ground. So focus on the question we've been – we tried to – and I don't know if there's a good answer. Let's assume it's a – let's assume they shouldn't have done it. It's excessive force. But you haven't shown any separate injury from it. Does that doom your case? The fact that he was battered and wasn't hospitalized or can't show a contusion I think – I don't think you can batter somebody when they've been handcuffed. And I don't think you have to – I think you can either. And I don't think you have to show that they've been – I'm sorry. Just – and I don't want to extend this. Your colleague says in the absence of an allegation of separate injury, then your 1983 case should fail. What's your response to that? Well, the injury is the battery. I'm not aware of any case law that suggests that if he doesn't see a doctor, if he doesn't go to a hospital – he was battered. He was kicked. All right. Thank you, Counsel. Thank you. Weddell v. Nesman is submitted, and we'll take up Lucey v. City of Chico.
judges: Wardlaw, Hurwitz, Oliver